UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

)
YALE FISHMAN, MITCHELL GELNICK, )
and PROVIDENT WEALTH ADVISORS, )
)
      Plaintiffs, )
)
v. )    Civil Action No. 13-12166-LTS
)
JOHN HANCOCK LIFE INSURANCE )
COMPANY (U.S.A.), et al.,[1] )
)
      Defendants. )
)

ORDER ON THIRD-PARTY DEFENDANT ERIC SCHWARTZ'S
MOTION TO DISMISS PLAINTIFFS' FIRST
AMENDED COMPLAINT AND MOTION TO TRANSFER VENUE

March 27, 2014

SOROKIN, C.M.J.

In this civil action, Plaintiffs filed a three-count Complaint against the Defendants alleging negligence (Count I), breach of contract (Count II), and violation of M.G.L. c. 93A, § 11 (Count III), with respect to non-payment of commissions.

I.    BACKGROUND

    A.    Procedural

Plaintiffs filed this Complaint against the John Hancock Defendants (collectively "John Hancock") on September 3, 2013. The Defendants promptly answered the Complaint and then two of the Defendants filed a third party complaint against third party Defendant Eric Schwartz. Thereafter, Plaintiffs filed an Amended Complaint. In response, Schwartz moved to dismiss the

---

[1] The additional Defendants are John Hancock Financial Network, Inc., Signator Investors, Inc., Signator Insurance Agency, Inc., and The Manufacturers Investment Corporation.

claims against the John Hancock Defendants stated in the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 14(2)(C), and, alternatively, move to transfer venue to the Southern District of New York. The John Hancock Defendants answered the Amended Complaint. Subsequently, the John Hancock Defendants took no position on the Motion to Transfer and, essentially, stated their agreement that the Amended Complaint should be dismissed. Plaintiffs oppose dismissal and transfer.

B.  Factual

Briefly, the following facts are drawn from Plaintiffs' First Amended Complaint (Doc. No. 16).[2] John Hancock markets and sells insurance products through a network of General Agents. Doc. No. 16 ¶ 18. In addition to selling John Hancock insurance products, the General Agents facilitate contractual relationships between John Hancock and other entities ("Sub-Agents") seeking to sell John Hancock insurance products. Id. ¶ 19. John Hancock approves all Sub-Agents and prepares the form sub-agency agreements with generally consistent material terms. Id. ¶¶ 19-20. On or around September 2001, Plaintiffs became Sub-Agents for the sale of John Hancock insurance products. Id. ¶ 28.

Under the form sub-agency agreement, John Hancock agrees to pay a Sub-Agent initial and residual commissions on all insurance products the Sub-Agent sells at rates set by John Hancock. Id. ¶¶ 20-21. Instead of paying these commissions directly to the Sub-Agent, John Hancock remits to the General Agent through which the Sub-Agent established its business relationship with John Hancock. Id. ¶ 22. The sub-agency agreement requires the General Agent to forward the appropriate commissions to the Sub-Agent without discretion to decrease

---

[2] In keeping with the standard of review applicable to motions brought pursuant to Fed. R. Civ. P. 12(b)(6), factual allegations are recited as if true. See Arturet-Velez v. R.J. Reynolds Tobacco Co., 429 F.3d 10, 13 (1st Cir. 2005).

the amount paid.[3]  Id. ¶¶ 22, 24.  Moreover, John Hancock delegated to the General Agents the responsibility of preparing the tax forms which reflect the commission payments.  Id. ¶ 23.

John Hancock continued these practices despite knowing that certain Sub-Agents were not being properly compensated.  Id. ¶ 25.  It did so without implementing internal controls or tools of oversight.  Id. ¶¶ 26-27.  Sometime in late March 2013, Plaintiffs learned they had earned residual commissions for which they had not been paid.  Id. ¶ 29.  Collectively, Plaintiffs failed to receive residual commissions of at least $662,222.95, which were earned within the time-frame of January 2009 through June 2012.  Id. ¶¶ 30-32.

## II.  STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Dismissal for failure to state a claim is appropriate when the pleadings fail to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."  Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)) (internal quotation marks omitted).

## III.  DISCUSSION

First, Schwartz asserts that the economic loss rule bars Plaintiffs' negligence claim.  "In the context of ordinary negligence claims in tort actions, the [Massachusetts] Supreme Judicial Court has held that 'purely economic losses are unrecoverable in tort and strict liability actions in

---

[3] General Agents are free, however, to provide an "incentive" increase in a commission paid to a Sub-Agent consisting of a portion of the General Agent's own commission.  Id. ¶ 24.

the absence of personal injury or property damage.'" Cummings v. HPG Int'l, Inc., 244 F.3d 16, 24 (1st Cir. 2001) (quoting FMR Corp. v. Boston Edison Co., 415 Mass. 393, 395 (1993)). Where there is a contract, the economic loss rule is "founded on the theory that parties to a contract may allocate their risks by agreement and do not need the special protections of tort law to recover for damages caused by a breach of the contract." Arthur D. Little Int'l, Inc. v. Dooyang Corp., 928 F. Supp. 1189, 1202 (D. Mass. 1996) (quoting South Carolina Electric & Gas Co. v. Westinghouse Electric Corp., 826 F. Supp. 1549, 1557 (D.S.C. 1993)). Massachusetts courts, however, "have upheld tort claims to recover economic losses from negligent breach of contractual duties." Id. at 1203 (citing Abrams v. Factory Mut. Liab. Ins. Co., 298 Mass. 141, 144 (1937) (insured could bring cause of action in tort for insurer's negligent performance of duty to defend resulting in judgment over policy limit)). The relationship of the parties in contractual privity, such as fiduciary or one that is legally protected, will be considered. See Abrams, 298 Mass. at 142-43; Almeida v. U.S. Bank Nat. Ass'n, No. 12-11565-RWZ, 2014 WL 907673, at *7 (D. Mass. Mar. 10, 2014). Thus, a plaintiff may allege negligence arising out of the breach of a duty of care established in a contract, the scope of such duty being defined by the terms of the contract.[4] See Arthur D. Little Int'l, Inc., 928 F. Supp. at 1203 (citing Abrams, 298 Mass. at 144). In such a circumstance the economic loss rule does not bar the claim. Id.; Abrams, 298 Mass. at 144 ("Although the duty arises out of the contract and is measured by its terms, negligence in the manner of performing that duty as distinguished from mere failure to perform it, causing damage, is a tort."). While there may be a question as to whether the contract at issue creates such duties, that question is not amenable to resolution on a

---

[4] There is no double recovery, however, for the same harm. Arthur D. Little Int'l, Inc., 928 F. Supp. at 1203 n.4.

motion to dismiss when the contract is not before the Court. Nothing here precludes Defendants from challenging the claim on a fuller record.

Second, Schwartz asserts that Plaintiffs have "failed to plead any actual breach of any terms of the alleged Sub-Agent contract" by failing to plead and prove specific conduct constituting breach. Doc. No. 19 at 7. For notice pleading purposes, however, Plaintiffs have pled a breach of contract claim. They make the following allegations:

> Under the terms of John Hancock's form sub-agency agreement, the Company agreed to pay Sub-Agents certain amounts as commissions on all insurance products they sold. In particular, John Hancock agreed to pay an "initial" commission in the year of the actual sale of a given policy and a "residual" or "renewal" commission for each subsequent year that the policy remained in force or was renewed. Doc. No. 16 ¶ 20.
>
> Plaintiffs entered into sub-agency agreements with John Hancock and a General Agent (New York Penn Plaza Schwartz General Agency . . . [)]; Penn Plaza Partners LLC []; [and] Atlantic Partners Financial Group LLC[.] Id. ¶ 28.
>
> John Hancock failed to pay or cause to be paid to Fishman residual commissions of at least $649,895.22 for the period from January 1, 2010 to June 23, 2012[.] Id. ¶ 30.
>
> John Hancock failed to pay or cause to be paid to Gelnick residual commissions of at least $4,872.54 for the period from January 1, 2012 to June 23, 2012 . . . and residual commissions of an unknown amount for the period from January 1, 2010 to December 31, 2011[.] Id. ¶ 31.
>
> John Hancock failed to pay or cause to be paid to Provident residual commissions totaling $7,455.19 for the period from January 3, 2009 to June 23, 2012 . . . and residual commissions of an unknown amount for the period from January 1, 2010 to December 31, 2011[.] Id. ¶ 32.
>
> John Hancock entered into contracts with Plaintiffs whereby Plaintiffs agreed to sell John Hancock insurance products in exchange for being paid initial and residual commissions by John Hancock on the sale of those insurance contracts. Id. ¶ 40.
>
> Defendants failed to pay residual commissions earned by Plaintiffs on the sale of John Hancock insurance contracts, thereby breaching their contracts with Plaintiffs. Id. ¶ 41.

These allegations along with the remainder of the Amended Complaint suffice to state a claim against John Hancock for breach of contract.

Third, Schwartz asserts that the 93A claim fails to allege any unfair or deceptive acts and fails to plead any facts establishing that the acts at issue occurred primarily and substantially in Massachusetts. He contends that Plaintiffs' 93A claim is cut from the same cloth as their negligence and breach of contract claims, and that more is required to allege unfair or deceptive practices. See, e.g., Aquino v. Pacesetter Adjustment Co., 416 F. Supp. 2d 181, 192 (D. Mass. 2005) ("A negligent act, standing alone, will not support Chapter 93A liability.") (citing Glickman v. Brown, 21 Mass. App. Ct. 229, 235 (1985)); Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 100-01 (1979) (concluding violation of commercial agreement insufficient to support 93A claim). Furthermore, Schwartz argues that the 93A claim focuses upon conduct in New York where Plaintiffs sold the policies, Schwartz paid (or did not pay) the commissions, and both Plaintiffs and Schwartz operate their businesses. Had Plaintiffs brought the claim Schwartz describes, they would not prevail. However, Plaintiffs allege a claim predicated on different factual allegations. The Plaintiffs allege unfair and deceptive acts by John Hancock primarily in Massachusetts in the form of John Hancock's decision to employ General Agents as intermediaries, John Hancock's alleged failure to supervise the General Agents, John Hancock's alleged failure to establish any internal controls, and John Hancock's failure to respond to reports of General Agents failing to pay commissions. Doc. No. 16 ¶ 44. These alleged actions, at least on the present record drawing all reasonable inferences in Plaintiffs' favor, occurred substantially and primarily in Massachusetts, and are sufficiently stated for pleading purposes.

For these reasons, the Motion to Dismiss is DENIED. The Motion to Transfer Venue fails as well. Under 28 U.S.C. § 1404 a moving party bears a heavy burden to establish that the

Southern District of New York is a substantially more convenient forum. <u>Coady v. Ashcraft & Gerel</u>, 223 F.3d 1, 11 (1st Cir. 2000). Plaintiffs' Amended Complaint focuses upon Plaintiffs' alleged contract with John Hancock and John Hancock's alleged failures to perform its obligations. Schwartz has failed to establish that the witnesses and evidence bearing on these allegations tips substantially in favor of the Southern District. The other factors the Court must consider are neutral or weigh in Plaintiffs' favor. The motion suffers from an additional problem. There is a serious question as to whether a third party defendant has standing to seek a transfer, under § 1404, of the underlying complaint against a defendant/third party plaintiff, at least where, as here, the Defendants neither moved to transfer nor joined in Schwartz's motion. Because the motion fails on the merits I need not resolve that question.

IV. <u>CONCLUSION</u>

For the foregoing reasons, Third Party Defendant Schwartz's Motion to Dismiss (Doc. No. 18) Plaintiffs' First Amended Complaint and Schwartz's Motion to Transfer Venue (Doc. No. 20) are DENIED.

<u>/s/ Leo T. Sorokin</u>  
Leo T. Sorokin  
Chief United States Magistrate Judge